## GILL v. HANDLEY.
### No. 4845.

Circuit Court of Appeals, Seventh Circuit.
Feb. 13, 1933.

William T. Gill, of Milwaukee, Wis., for appellant.

Herman A. Fischer, of Chicago, Ill., Leo F. Nohl, of Milwaukee, Wis., and John G. Campbell, Delbert A. Clithero, and Carlton L. Fischer, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

This action was instituted by appellant to recover damages alleged to have been sustained as a result of appellee's alleged breach of an express contract. A jury was waived, and at the close of appellant's case the court sustained appellee's motion for a nonsuit and dismissed the complaint, and from that ruling this appeal is presented.

On April 30, 1924, the parties entered into a contract under which they became associated in business. The contract provided in substance that a corporation, by the name of "The Handley Corporation," was to be formed for the purpose of purchasing chattel mortgage notes from the appellee; the capital stock of that company was to be of the aggregate par value of $100,000, which amount was to be paid in by appellant within one year; one-half the stock was to issue to each party; and appellee was to indorse his stock to appellant, who should hold the same until paid for by appellee; appellee was to receive the net earnings on that portion of his own stock for which he had paid, if any, and any earnings in excess of 6 per cent. per annum on his stock for which he had not paid, and all other net earnings of the corporation should belong to appellant; appellant was to be vice president and secretary of the corporation and appellee was to be president and treasurer, and was constituted voting trustee of all the stock for a period of ten years; both parties were to be directors, and appellee was to choose a third.

The contract was in the form of a letter written by appellee to appellant, which was accepted by appellant. The ninth and tenth clauses, which are in controversy, are as follows:

"Ninth: In view of the fact that you are furnishing the original capital and giving me control of the company, as well as complete control of the finances of the company, it is expressly understood that at least until such time as I have paid for the amount of stock that has been issued to me in the proposed corporation, that I hereby agree to indemnify you against loss in the business and that in the event that the business sustains a loss, that makes liquidation necessary, that you are to receive back the full amount of money that you have put into it, plus six per cent (6%) interest, and if the business does not pay that in the settlement, I shall be personally liable to you for any deficit.

"Tenth: It is understood that instead of division of the profits as above set forth that it shall be optional with you to elect to draw from the treasury, as compensation for moneys advanced by you, an amount equal to that which I will draw as a salary for handling the business and you may elect at any time to change to either one of the above conditions as a compensation to you for originally advancing the capital necessary in the business and that option shall obtain in full force and effect during the life or existence of our relations in the finance business."

The contract further provided that there was to be an application of earnings every six months to the purchase of stock, and appellant was to receive a daily report on the condition of the company.

The corporation was organized and commenced business, and appellant paid in the entire capital within the year as agreed. On May 1, 1926, appellant elected to receive the benefits under the tenth clause of the contract, and from that date to February 1, 1931, by virtue of that election, he received $1,000 each month.

From time to time appellant loaned money to the corporation and took its promissory notes therefor, and in January, 1931, these notes aggregated more than $65,000. About that time a controversy arose between the parties over the fact that appellee insisted on crediting the corporation notes which appellant held with the $7,000 which appellant had received under clause 10 of the contract from June, 1930, to December, 1930. Correspondence and telephone conversations ensued which ended in appellee's placing the matter in the hands of his attorneys for settlement and notifying appellant of that fact, and further notifying him that all relations between appellant and appellee had ceased.

On March 7, 1931, appellant was contending that his investment in the corporation amounted to $177,534.22, which consisted of capital advanced to pay for the stock issue in the sum of $100,000, and loans made to the corporation in the sum of $77,534.22. On the last-named date appellee and the Handley Finance Corporation as parties of the first part entered into a contract with appellant as party of the second part.

By way of preamble that contract among other things recites in substance as follows:

(1) Whereas appellee has not paid for his stock as provided in the first contract, and (2) whereas in the first contract it is provided that, in the event that said business sustains a loss that makes liquidation necessary, Gill is to receive back the full amount of money that he put into it plus 6 per cent. interest, and (3) whereas said business has not sustained any loss that makes liquidation necessary, but Gill is desirous of receiving back his said money, and the corporation desires that he should receive it.

Following this preamble the contract proceeds:

"Therefore It Is Covenanted and Agreed by the parties hereto:

"First, that the parties of the first part shall pay to Nellie Remley of Milwaukee, Wisconsin, the sum of Twenty Thousand ($20,000) Dollars in payment of a note for said sum, which note has been endorsed by the said Thomas H. Gill and which sum of money has been loaned by the said Nellie Remley to the Handley Finance Corporation.

"Second, that the parties of the first part shall deposit in the Continental Illinois Bank the sum of One Hundred Twenty Thousand ($120,000) Dollars of bills receivable. The said bills receivable to be selected out of all of the bills receivable of the Handley Finance Corporation by the party of the second part.

"Third, that the parties of the first part shall make every effort to collect, without cost to the party of the second part except attorney's fees and court costs necessarily to be expended, the said bills receivable.

"Fourth, that all sums of money so collected by the parties of the first part shall be deposited, within twenty-four hours after date of collection, in the aforesaid bank to the account of the said Thomas H. Gill.

"Fifth, that the said Thomas H. Gill shall relinquish all right, title and interest in any and to any property of any character, type or description belonging to the Handley Fi-

nance Corporation and any and all evidence of title to any interest in the said Handley Finance Corporation.

"Sixth, that all salaries, expenses of collection, maintenance costs, over-head et cetera in the collection of the said bills receivable except attorney's fees and court costs shall be borne by the parties of the first part and paid out of any property remaining in the possession of the parties of the first part, it being distinctly understood that the parties of the first part do not guarantee collection of the same nor shall the failure to collect the same be made a charge upon the parties of the first part.

"Seventh, it is the intention of the parties to this agreement that upon the acceptance of the said sum of One Hundred Twenty Thousand ($120,000) Dollars in bills receivable and the payment of the Remley notes as aforesaid that the same shall constitute a severance of all relations between the parties to this agreement; that the said party of the second part shall cease to have any interest in the Handley Finance Corporation and; that the execution of this contract shall operate as a release of all liability that each of the parties to this agreement may have against each other from the beginning of the world to the date of the execution of this agreement."

At the time of entering into the last contract, appellant had some suspicion that the corporation was probably in an alarming financial condition and might be insolvent. Pursuant to this contract, the Remley note was paid, bills receivable in the amount of $120,000 were selected by appellant's son on March 10, 1931, and by him deposited in the Continental Illinois Bank for collection, and all stock issued by the corporation was returned by appellant to appellee. On that same day appellant by his son, who carried on all negotiations relative to the sale of the deposited obligations, suggested to appellee that he buy them back at a suitable discount, and from that time appellant tried to sell them to any one who might buy them. He first offered them to appellee for $85,000, then for $65,000, then for $55,000, and finally sold them to him for $50,000 on March 18, 1931. Payment therefor was then made, and the receivables thus sold were thereupon delivered by appellant to appellee.

On March 11, 1931 appellee wrote to appellant that as yet appellee had no satisfactory authority from either the bank or appellant to permit appellee to deposit the sums he had collected on the deposited receivables, and requested appellant to have the bank acknowledge its receipt of the receivables and its readiness to receive from appellee the collections made by him. The next day appellant notified appellee that since receiving appellee's request he had notified the bank to arrange the details of collection with appellee. On March 16, 1931, the bank wrote appellee that it had received the notes delivered to appellant under the contract, and it was authorized to receive payments thereon, and that appellant would waive the twenty-four hour clause of the contract with respect to uncertified checks received by appellee, such amounts to be forwarded to the bank when appellee had collected and received payment of such uncertified checks.

No deposits of collections were made by appellee. That he made some collections is admitted, but the record does not disclose the amount or whether they were in the form of cash, or certified or uncertified checks.

The general nature of appellant's claim is to recover damages for a breach of clause 9 of the first contract, by virtue of which appellee promised to indemnify appellant against loss in the business. It is contended by appellant that this clause contains two distinct and separable promises: (1) To indemnify appellant against loss in the business; (2) to guarantee appellant against loss in the business in case the corporation should sustain a loss which would make liquidation of the corporation necessary. It is not contended that liquidation of the corporation was made necessary at any time.

Appellee contends: (1) That clause 9 of the first contract does not contain two separable promises; and (2) that in no event can he be held liable as an indemnitor under clause 9, unless and until it is shown that the corporation sustained a loss which rendered its liquidation necessary. It is further contended by appellee that, if said clause 9 be construed in the manner as claimed by appellant, there can be no recovery by reason of the execution and performance of the contract of March 7, 1931.

In response to appellee's last contention, however, appellant insists (1) that appellee breached the last contract by not depositing in the bank the amounts collected by him on the bills receivable within twenty-four hours after they were collected, and for that reason appellee's liability under clause nine still exists, and (2) that the last contract does not purport to release appellee from liability for any damages which arose or accrued aft-

er the date of the contract. As a basis for this last contention, appellant insists that the second contract was merely an agreed method for liquidating his investment in the business. In other words, it was not intended to release any damages, contemplated by clause 9, which at that time had not been definitely determined.

The evidence does not support the charge that appellee breached the last contract by not making deposits within twenty-four hours after collecting them. The record is uncontradicted that appellant waived this provision as to all checks except those which were certified. There is no showing as to the amount so collected by appellant nor as to their character, and the trial court could not say from these facts that there was a breach of the contract in this respect. Admitting, without conceding, that there was a breach in this respect, we think it was not substantial in view of the facts that the contract was executed on March 7, 1931, and the bills receivable were not placed in the bank by appellant until March 10. Appellee was not notified until March 16 that the bank was authorized and ready to receive said collections from him, and on March 18 the entire amount of bills receivable so deposited with the bank were sold and transferred back to appellee.

A fair construction of clause 9 of the first contract does not warrant the conclusion that there is contained therein two separable contracts of indemnity. All doubt in this respect is quite completely dissolved by the construction which both parties placed upon it in the preamble of the second contract. By that construction we hold that appellee was liable as indemnitor under clause 9 of the first contract only in the event that the corporation sustained a loss which made liquidation necessary. That fact, it is admitted, did not exist.

We cannot agree with appellant's contention that the second contract was merely an agreed method for the liquidation of his investment. It was a complete settlement of all their differences. By its terms appellant was permitted to select from the corporation's assets bills receivable in the aggregate sum of $120,000 for which he in turn released all of his interest in the corporation and turned all the corporation stock over to appellee. At that time his total investment in the corporation was about $177,000, and, when he accepted the bills receivable in lieu of his investment, there was a loss of $57,-000 which was then and there definitely de-

termined, and it was just as definitely released when he signed the contract.

It is true that he subsequently sustained a loss of $70,000 when he sold the bills receivable to appellee for $50,000, but he did not lose it in the business of the corporation, for at that time he had no investment in the corporation.

In any event, we are convinced that whatever losses he may have sustained, directly or indirectly, by reason of his connection with the business, were fully released by the seventh and final paragraph of the second contract. That clause is sufficient to cover all liability of appellee to appellant with relation to this business venture, whether that liability be liquidated or contingent.

Appellant contends that in the instant case there was no liability until the loss was determined, and for that reason the loss which was sustained by him, subsequently to the execution of the second contract, was not released by that contract. A perusal of the cases relied upon by appellant in support of this proposition warrants the conclusion that the word "liability" is a variable term, and its meaning must always be construed in connection with the context in which it is used. We find no authority which under the present circumstances would preclude our use of the word in the sense above ascribed, nor do we find any authority which holds that a party to a contract which entitles him to indemnity in case of loss cannot release the other party from that liability before the contingency arises.

Judgment affirmed.